# Third District Court of Appeal

## State of Florida

Opinion filed March 29, 2023.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D22-460
Lower Tribunal No. 20-2309
_____


**Juan Gervas, et al.,**
Appellants,

vs.

**Gazul Producciones SL Unipersonal,**
Appellee.


An Appeal from the Circuit Court for Miami-Dade County, Maria de Jesus Santovenia, Judge.

Polsinelli PC, and Henry H. Bolz, IV and Ghislaine G. Torres Bruner, for appellants.

Carlton Fields, and Sylvia H. Walbolt, Thomas Meeks, and Charles Throckmorton, for appellee.


Before FERNANDEZ, C.J., and SCALES and MILLER, JJ.

SCALES, J.

Appellants, defendants below, Juan Gervas ("Gervas") and MOW Productions, LLC ("MOW"), appeal a final summary judgment finding Gervas individually liable to appellee, plaintiff below, Gazul Producciones SL Unipersonal ("Gazul") in the amount of $307,848.77 and finding Gervas and MOW jointly and severally liable to Gazul in the amount of $1,306,225.00. We affirm Gazul's judgment against Gervas, individually, and we affirm in part and reverse in part Gazul's judgment against Gervas and MOW, jointly and severally.

**I. Relevant Background**

Gervas was a paid consultant to Spanish musician Alejandro Sanz. Gazul is a Spanish corporate entity, founded by Sanz, to represent Sanz's business interests. Gervas created and managed MOW, a Florida limited liability company, to serve as Gazul's domestic agent for Sanz's 2019 concert tour of the United States.

The uncontroverted evidence was that MOW's function was to collect proceeds from the concert tour's promoter (Live Nation) and pay tour expenses. Some of these tour expenses were advanced by Gazul. The parties agree that MOW was to reimburse Gazul for advanced expenses, and to remit to Gazul all net concert tour revenue after paying tour expenses.

After the concert tour ended, the parties disputed (i) the amount of compensation Gazul had agreed to pay Gervas, and (ii) the amount of net tour revenue that MOW was to remit to Gazul. Specifically, Gazul, in its multi-count January 30, 2020 lawsuit against Gervas and MOW, alleged that Gervas retained from concert tour proceeds far greater than his allegedly agreed-upon yearly salary of 100,000 Euros, and that MOW and Gervas failed to remit net tour revenue and reimbursements to Gazul, instead converting the funds due to Gazul.

Gazul filed a motion for summary judgment along with sworn declarations from Gazul advisor and board member Enrique Vallejo, Gazul board member Raquel Perera, Gazul controller Javier Gallego, and accountant Felix Castillo, who had worked with Gazul, Gervas and MOW. Castillo's declaration states that MOW "received $1,306,225 relating to the 2019 United States Tour which remains owing to" Gazul. Gallego's declaration (and accompanying summary of payments) states that Gazul overpaid Gervas $307,848.77 in compensation. Gazul also submitted Gervas's deposition transcript, in which Gervas was unable to explain his defense to Gazul's claim that Gervas's agreed-upon salary was capped at 100,000 Euros per year.

Gervas's principal defense was that the parties had agreed that Gervas's compensation would be significantly more than 100,000 Euros per year. While not entirely clear, MOW's principal defense was that Gazul's lawsuit was premature because not all concert tour expenses had been paid, referring primarily to a significant tax liability. MOW filed a sworn declaration of its accountant Jorge De La Torre in which he stated that MOW's tax liability, as of the time of his declaration, was $218,647, plus fees and interest.[1] Gervas and MOW conceded, through De La Torre's declaration, that they owed $105,218 to Gazul.

The trial court conducted a lengthy summary judgment hearing and, on November 9, 2021, entered the judgment on appeal, in which the trial court found that Gervas was liable to Gazul in the amount of $307,848.77 for overpaid compensation to Gervas, and that Gervas and MOW had converted $1,306,225 of Gazul's funds by failing to remit to Gazal concert tour proceeds and advance repayments. On February 11, 2022, the trial court entered an order denying Gervas and MOW's motion for rehearing. This appeal timely ensued.

---

[1] In a November 1, 2021 partial summary judgment order (that was incorporated into the challenged final summary judgment), the trial court found MOW's potential tax liability to be $308,053.99, this amount consisting of a tax deficiency notice from the Internal Revenue Service for $245,405.86 and one from Florida Department of Revenue for $62,648.13.

## II. Analysis[2]

Under the new summary judgment standard,[3] Gazul, as the party seeking affirmative relief, had the initial burden to establish that Gazul both

_____

[2] We review *de novo* the trial court's summary judgment. <u>Ibarra v. Ross Dress for Less, Inc.</u>, 350 So. 3d 465, 467 (Fla. 3d DCA 2022).

[3] Because the trial court heard Gazul's motion for summary judgment after May 1, 2021, the trial court applied Florida's new summary judgment standard. Prior to our high court's rule amendment of Florida Rule of Civil Procedure 1.510, a party could defeat a summary judgment motion by a showing in the record of a "scintilla of evidence" that could create a fact issue. <u>See</u> <u>Mobley v. Homestead Hosp.</u>, 291 So. 3d 987, 992 (Fla. 3d DCA 2019) (Logue, J., concurring). Under the revised rule, effective May 1, 2021, this is no longer the case. <u>In re Amendments to Fla. Rule of Civil Procedure 1.510</u>, 317 So. 3d 72, 76 (Fla. 2021). Under the new summary judgment standard, a movant who bears the burden of persuasion at trial has the initial burden of demonstrating the absence of a genuine issue of material fact and must produce evidence sufficient to result in a directed verdict at trial. <u>Id.</u> at 75-77. Once this initial burden is met, the party opposing the summary judgment motion must then provide evidence showing that there exists a genuine issue of material fact. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986). "A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers or other materials[.]" Fla. R. Civ. P. 1.510(c)(1)(A). Importantly, "[i]f the evidence [presented by the nonmovant] is merely colorable, or is not significantly probative, summary judgment may be granted." <u>In re Amendments to Fla. Rule of Civil Procedure 1.510</u>, 309 So. 3d 192, 193 (Fla. 2020) (quoting <u>Anderson</u>, 477 U.S. at 249-50)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." <u>Id.</u> (quoting <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007).

5

overpaid Gervas in compensation and that Gervas and MOW converted concert tour proceeds that they were supposed to remit to Gazul. Once Gazul met its burden, the burden then shifted to Gervas and MOW, the non-movants, so that Gervas had to show that Gervas had an agreement with Gazul for compensation exceeding 100,000 Euros per year, and Gervas and MOW had to show that they properly retained certain concert tour revenues.

On our *de novo* review of the summary judgment record, we conclude that Gazul met its initial burden to establish that Gervas was entitled to a salary of 100,000 Euros per year only and that he was overpaid by the sum of $307,848.77. Gervas failed to meet his burden to show that a reasonable factfinder could find that Gervas was contractually entitled to the greater amount that Gervas had been paid. We therefore affirm Gazul's summary judgment against Gervas.

We also affirm that portion of Gazul's summary judgment against Gervas and MOW, jointly and severally, that finds them liable to Gazul for the unrepaid funds Gazul advanced to MOW and for the net concert tour proceeds that have not been remitted to Gazul. Indeed, Gervas and MOW's own witness, De La Torre, testified in his declaration that monies remain due and owing to Gazul.

6

We, however, are unable to reconcile the declarations of the competing witnesses without improperly weighing the evidence. See Gracia v. Sec. First Ins. Co., 347 So. 3d 479, 482 (Fla. 5th DCA 2022) (holding that under the new summary judgment standard, "the general rule remains intact: credibility determinations and weighing the evidence 'are jury functions, not those of a judge,' when ruling on a motion for summary judgment" (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986))). Gervas and MOW concede, through their witness De La Torre, that they owe Gazul in excess of $105,000, while Gazul's witness places the figure in excess of $1,300,000. This significant disparity between witness declarations appears to us to raise a genuine issue of material fact on the issue of damages that would preclude summary judgment. See Knight v. N.Y. State Dep't of Corr., 18-CV-7172 (KMK), 2022 WL 1004186, at *6 (S.D. N.Y. 2022); Andries v. Royal Caribbean Cruises, Ltd., 12 So. 3d 260, 261 (Fla. 3d DCA 2009) ("[A] 'battle of the experts' creates an issue for resolution by the jury (precluding summary judgment on that issue if material to the underlying cause of action).").

Further, the tax liability issue precludes summary judgment as to the damages Gervas and MOW owe to Gazul. As noted above, MOW asserts (and the trial court found in its November 1, 2021 partial summary judgment

7

order) that MOW has unpaid tax liabilities to the Internal Revenue Service and the Florida Department of Revenue of $308,053.99. The trial court determined that the parties did not intend for MOW – an entity established to "pass through" concert tour revenues to Gazul – to incur tax liability. The trial court's partial summary judgment also impliedly holds that if, irrespective of the parties' intentions, MOW does have a tax liability resulting from its operations, Gervas and MOW agreed to indemnify Gazul for, and hold Gazul harmless from, such tax liability. While the parties might never have *intended* for MOW to incur any tax liability, we are unable to discern from the summary judgment record the requisite unrebutted evidence that, if such intentions proved to be frustrated, Gervas and MOW agreed to bear the burden of any such liability and how Gazul otherwise would account for this potentially outstanding concert tour expense.

**III. Conclusion**

We affirm the trial court's final summary judgment against Gervas on Gazul's compensation claim alleging that Gervas was overpaid by $307,848.77. We also affirm that portion of the final summary judgment order finding Gervas and MOW jointly and severally liable to Gazul on Gazul's claim that they owe Gazul reimbursement of advanced funds and remittance of net concert tour revenue. We reverse that portion of the final summary

8

judgment order affixing damages as to those claims, concluding that Gazul, on this record, did not meet its burden to establish the existence of no genuine issue of material fact, and we remand for determination of the amount of damages to which Gazul is entitled on those claims.

Affirmed in part; reversed and remanded in part.